IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cause No. CR 03-11-GF-SEH-CSO |
| | ) | CV 04-58-GF-SEH-CSO |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| STEPHAN FRANCIS DAVIS, | ) | |
| | ) | |
| Defendant/Movant. | ) | |
| _____ | ) | |

This matter came before the Court on August 24, 2006, for an evidentiary hearing regarding Defendant/Movant Davis's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. The Court has considered the record of the case, testimony from Davis and his counsel, Ed Sheehy, as well as the arguments and proposed Findings and Conclusions of the parties.

**I. Background**

On August 13, 2002, Defendant Stephan Davis and two friends traveled from Missoula to Carter, Montana, for the purpose of stealing anhydrous ammonia from a fertilizer plant located there. The ammonia was to be delivered to others and used in the manufacture of methamphetamine. Before the three left Missoula, Davis parked his own truck at the truck stop in Bonner, Montana.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

He removed from it a loaded Ruger 44 Magnum Super Blackhawk pistol and placed the gun, without his two companions' knowledge, in the Ford pickup they would drive to Carter. Davis has consistently asserted that he put the gun in the vehicle bound for Carter because he did not want to leave it in his own truck at the truck stop where it might be stolen.

On the way to Carter, Davis shared a quarter-gram of methamphetamine with his cohorts. The trio arrived in Carter under cover of night. When they located the anhydrous ammonia tanks, Davis and one of his friends jumped out of the truck. Davis left the gun in the truck. The driver of the truck kept going; the plan was that he would come back later. Davis and his friend were spotted approaching the tanks and were arrested in a field near the tanks about an hour later, after the sun arose. When the driver of the truck was stopped, Davis's gun was found in the truck. The driver did not know the gun was there and no gun-related charges were filed against him.

A federal case was initiated against Davis on February 18, 2003. The United States filed an Information (Court's doc. 1) alleging six counts and a forfeiture count against Davis. On the same day, the United States filed an unconditional plea agreement, signed by Davis, Assistant United States Attorney Bernard Hubley, and Davis's counsel, Ed Sheehy. Davis agreed to plead guilty to all counts of the Information. He also filed a motion to plead guilty (Court's doc. 3).

Count IV of the Information is the crux of Davis's § 2255 motion. It carried a mandatory minimum five-year term of imprisonment, consecutive to any other sentence imposed. Count IV alleged:

> On or about August 13, 2002, and before, near Carter, Montana, and elsewhere in the State and District of Montana, the defendant, STEPHAN FRANCIS DAVIS, *in furtherance of* a drug trafficking crime for which he could be prosecuted in a court of the United States, that is, *conspiracy to distribute or distribution of*

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

*methamphetamine*, did knowingly and unlawfully possess a firearm, to-wit: a Ruger, Super Blackhawk, 44 Magnum, bearing Serial Number 86-79429, in violation of Title 18 U.S.C. § 924(c)(1)(A)(I).

Information at 3 (emphasis added).  Count I alleged a conspiracy to manufacture methamphetamine, based on the trip to Carter, Montana, to steal anhydrous ammonia.  Count II alleged possession and Count III alleged distribution of methamphetamine, based on Davis's use and sharing of methamphetamine on the way to Carter.  All events in Counts I through III were alleged to have occurred on or about August 13, 2002, but Count IV added the phrase "and before."  Count V charged Davis as a drug user or addict in possession of four other firearms, a violation of 18 U.S.C. § 922(g)(3).  Count VI charged him with possession of those, as well as the Ruger 44 Magnum, after conviction for a misdemeanor domestic violence crime, a violation of 18 U.S.C. § 922(g)(9).  Those offenses were also alleged to have occurred on or about August 13, 2002.

In the Plea Agreement, Davis admitted that, on August 13, 2002, he drove to Carter with others "for the purpose of stealing a fertilizer," anhydrous ammonia, "to be turned over to a methamphetamine cook."  Plea Agr't (Court's doc. 2) at 2, ¶ 6.  Although that conduct is alleged in Count I of the Information, the Plea Agreement does not use the word "conspiracy" to describe it. Davis also admitted that he possessed and distributed methamphetamine on the same day.  The Plea Agreement then says:

> Defendant admits that while engaged in this criminal conduct, he carried a handgun while committing acts in furtherance of this conspiracy.  This firearm is more specifically described as a .44 caliber, Super Blackhawk handgun, serial number 86-79429.

Plea Agr't at 3, ¶ 6.  The context does not clarify whether the "conspiracy" was the Count I conspiracy to manufacture – i.e., the theft of the anhydrous ammonia – or the conspiracy to distribute

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

referenced in Count IV.  The Plea Agreement also provided that Davis "waives any right to appeal

or to collaterally attack the conviction or sentence in this case."  Plea Agr't at 6, ¶ 9.

On February 28, 2003, the United States filed its offer of proof.  It said:

> While engaged in this conspiracy, the Defendant possessed a handgun, namely, a
> Ruger, Super Blackhawk, 44 Magnum, bearing Serial Number 86-79429 which he
> *carried to and transported in* the vehicle en route to the anhydrous tanks from which
> the anhydrous ammonia was to be stolen.

Offer of Proof (doc. 5) at 6, ¶ 5 (emphasis added).  Again, "this conspiracy" is unspecified.  The next

paragraph of the Offer of Proof says:

> On or about August 13, 2002, or before, the Defendant both used and distributed
> methamphetamine and such was done contemporaneously with his possession of
> firearms, including but not limited to a Ruger Mark II, .22 caliber semi-automatic
> pistol, Serial Number 211-22754; a Winchester Model 12, 12-gauge pump-action
> shotgun, Serial Number 138344; a Remington Model #512, .22 caliber bolt-action
> rifle, with no visible serial number; and a Mossberg Model #135B, .22 caliber bolt-
> action rifle, with no visible serial number.

Id. at 6-7, ¶ 6.  The Ruger Super Blackhawk 44 Magnum is not listed.  Count V of the Information

does not contain the phrase "including but not limited to"; it limits the charge to the listed firearms.

At the hearing on Davis's motion to plead guilty,[1]  Judge Haddon asked Davis to explain why

he believed he was guilty of Count IV:

> The Court:     Count 4 charges you with having this Ruger Black Hawk 44 in your
>                possession in connection with this drug activity.
>                     Tell me about that.
>
> Davis:         Before we left Missoula, the gun was in my truck.  And I didn't want
>                to leave the gun in my truck to get stolen, so I brought it with us to
>                Carter, Montana.
>
> The Court:     This was when you were coming up to get the fertilizer?

---

[1]At the hearing, AUSA David Dennis appeared in place of AUSA Hubley.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

Davis:          Yes, Your Honor.

Change of Plea Tr. (Court's doc. 10) at 36:25-37:10.

Davis was advised that the Plea Agreement waived his right to appeal, id. at 26:2-5, but he

was not specifically advised of the nature of a collateral attack or the fact that the Plea Agreement

waived his right to bring one.

At sentencing, Sheehy spoke on Davis's behalf.  He said:

> I believe that Mr. Davis realizes that he made a mistake by bringing the gun with
> him; but I think that his logic seems to be that he didn't want to leave that gun in his
> vehicle in Missoula because it could have been stolen; yet he's up in Carter stealing
> anhydrous ammonia or attempting to steal it.
>          I think that's the logic that comes from using drugs, because that really is
> illogical that you're going to be concerned about someone stealing your property
> when you're going out to steal other people's property.
>          But – And I think the other thing is that Mr. Davis, I don't think realized how
> serious it was to have a gun with him in a drug-trafficking crime.
>          Unfortunately, I think there's a lot of people out there that do not know how
> serious that is; but certainly as this [C]ourt knows, guns and drugs do not mix.

Sentencing Tr. (Court's doc. 17) at 6:1-16.

On June 12, 2003, Davis was sentenced to 78 months in prison.  That term is composed of

18 months on Counts I, III, V, and VI, and 6 months on Count II, all concurrent, plus 60 months on

Count IV, consecutive to the other counts.  See Judgment (doc. 12) at 2; Sentencing Tr. at 15:10-20.

Davis did not appeal.

Davis filed his § 2255 motion on June 14, 2004, within the one-year federal statute of

limitations.  See 28 U.S.C. § 2255 para. 6(1); Clay v. United States, 537 U.S. 522, 525 (2003)

(holding that conviction is final after time for petitioning for writ of certiorari expires, even when

no such petition is filed); United States v. LaFromboise, 427 F.3d 680, 685 (9th Cir. 2005) ("When

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

... judgment is entered and the availability of direct review expires, AEDPA's one-year statute of limitations will then begin to run.").  On August 26, 2004, the motion was dismissed, based on Davis's statements on the record at the time he changed his plea.  See Order (doc. 20) at 4-5.  The Court also found that "[t]he offered proof was sufficient to sustain a conviction under 18 U.S.C. § 924(c)(1)(A)," citing United States v. Krouse, 370 F.3d 965, 968 (9th Cir. 2004).

On December 21, 2005, the Ninth Circuit reversed, observing that "Davis is entitled to an evidentiary hearing ... unless the motion, files, and records of the case conclusively show that he is entitled to no relief."  Because "there is no such conclusive showing," the case was remanded for a hearing.  See Judgment (doc. 28) at 4.  Judge Haddon referred the matter to the undersigned on March 1, 2006.[2]

## II. Davis's Allegations

Davis claims that his guilty plea was invalid because it was based on erroneous legal advice, that he did not waive his right to appeal because he was misinformed about his plea, that he is actually innocent of violating 18 U.S.C. § 924(c)(1)(A)(I), and that he was misinformed as to the circumstances required to prove a violation of § 924.  See Mot. to Vacate (Court's doc. 18) at 4-7, ¶¶ 12A-D.  He also claims that the "[f]irearm was miles away from petitioner and inaccessible to him" and that "[e]ven if possession could have been proven, the Government would also have had to show[] 'infurtherance'" [sic].  Id. at 7.   The firearm listed in Count IV was not found in his possession and was not one of the weapons Davis forfeited.

---

[2] Davis's service copies of the Order of Referral and the undersigned's Order on pending motions dated March 2, 2006, were returned as undeliverable on March 13, 2006.  He was located on May 31, 2006, and re-served with those Orders.  He responded to the Order of March 2, 2006, on June 9, 2006.

Davis also filed a "Supplemental Brief" asserting claims under Blakely v. Washington, 542 U.S. 296 (2004).  Dismissal of those claims was affirmed on appeal and they are no longer before the Court.

On August 23, 2006, the day before the evidentiary hearing, Davis filed a motion to amend his § 2255 motion to add a claim that his guilty plea violated Fed. R. Crim. P. 11(b)(3) because there was no factual basis to support the plea.  See Mot. for Leave to Amend (Court's doc. 40).

## III. Motion to Amend

Fed. R. Civ. P. 15 "applies to habeas petitions with the same force that it applies to garden-variety civil cases." James v. Pliler, 296 F.3d 1124, 1126 (9th Cir. 2001) (internal quotation omitted) (quoting Calderon v. United States Dist. Court, 134 F.3d 981, 986 n.6 (9th Cir. 1998)).  Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts "determine[] the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999).  An amendment relates back to the filing of the original motion if it relies on "a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 2572 (2005).  Inferences are to be drawn in favor of amendment.  Griggs, 170 F.3d at 880.

While the Court initially granted the motion to amend at the hearing, the United States was invited to assert any argument it might have as to "whether the Court has jurisdiction to consider the Rule 11" issue.  See Evid. Hr'g Tr. (Court's doc. 48) at 75:3-4.  The United States asserts that the Rule 11 claim is procedurally defaulted.  See Proposed Findings and Conclusions (Court's doc. 45)

at 11, ¶ 2.  While this argument could be construed as going to the futility of amendment, the issue

of procedural default is closely intertwined with the merits under the circumstances presented here.

Moreover, the factual basis of Davis's plea to Count IV involves the same operative facts as his

claim of ineffective assistance of counsel, because the ineffective assistance claim concerns whether

Sheehy should have advised Davis to plead guilty to Count IV.  The amendment is therefore timely.

Consequently, the best course of action is to allow the amendment and to assess the issue of

procedural default separately.  The motion will be granted.

## IV. Analysis

### A. Waiver of Right to Collateral Attack

For four reasons, Davis's waiver of the right to collateral attack, see Plea Agr't at 5-6, ¶ 9,

does not bar his motion.  First, on December 21, 2005, the Ninth Circuit Court of Appeals decided

that "Davis is entitled to an evidentiary hearing on this claim unless the motion, files, and records

of the case conclusively show that he is entitled to no relief" and that "there is no such conclusive

showing."  If the terms of the waiver, read in conjunction with the terms of Davis's motion, were

sufficient to strip the Court of jurisdiction to hear the § 2255 motion, the circuit would not have

remanded the case for an evidentiary hearing.[3]

---

[3] Recently a panel of the Court of Appeals held that "entry of an unconditional guilty plea deprives us of *jurisdiction* to consider ... pre-plea constitutional claims."  United States v. Castillo, __ F.3d __, No. 05-30401, slip op. at 11910 (9th Cir. Sept. 22, 2006) (emphasis added); see also id., slip op. at 11910-11914 (Bybee, J., dissenting) (opining that prosecution failed to assert and so waived its rights under plea agreement's waiver of right to direct appeal).  However, Castillo was a direct appeal involving no challenge to the plea itself.  As set forth later in this section, the circuit also has expressed doubt that waivers of the right to file § 2255 motions are enforceable where a movant claims that his plea was involuntary or unintelligent due to ineffective assistance of counsel.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

Second, the United States waived any rights it has under this provision by failing to raise the waiver as a defense.  It had its first opportunity to do so in its "Motion for Review."  See United States' Motion for Review (Court's doc. 27-1) at 1-2.[4]  The matter could have been raised at the evidentiary hearing.  It also could have been raised in the United States' proposed findings and conclusions.  It could have raised the waiver as a reason to deny Davis's motion to amend.  However, the United States has not raised the waiver at any point.

Third, it does not appear that Davis was informed, at his change of plea hearing, of the terms of the waiver of his right to collaterally attack the sentence.  See Fed. R. Crim. P. 11(b)(1)(N); Change of Plea Tr. (Court's doc. 10) at 26:2-5 (addressing waiver of appeal but not waiver of collateral attack).  Consequently, the waiver was not validly entered.  Moreover, an agreement to waive appeal or collateral attack is only valid if the plea is valid under Rule 11.  Thus, a Rule 11 challenge is not precluded by a waiver of the right to appeal.  See, e.g., United States v. Portillo-Cano, 192 F.3d 1246, 1252 (9th Cir.1999) (holding that waiver of right to appeal does not preclude appeal where defendant's plea allocution did not conform to the requirements of Rule 11).

Finally, if a defendant were permitted to waive his right to collaterally attack the validity of his plea, practically anything could happen to a defendant unlucky enough to be represented by the least competent defense attorney in a prosecution headed by the least scrupulous prosecutor.  The Court does not suggest that either Mr. Sheehy or Mr. Hubley fall into those categories.  They certainly do not.  As a jurisprudential matter, however, it is inappropriate to enforce a waiver that

---

[4]  The United States did not request the opportunity to file an Answer.  Instead, it asked the Court either to review the record of the case or to hold an evidentiary hearing.  The prosecution did not draw the Court's attention to anything in the record of the case that might have obviated an evidentiary hearing.

would insulate the most vulnerable from the protection of judicial review.   Davis's motion challenges his plea itself and so fits the criteria under which most circuits, including the Ninth, have declined to enforce such waivers.   See, e.g., Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005) (citing, inter alia, United States v. Cockerham, 237 F.3d 1179, 1181-87 (10th Cir. 2001) ("a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver," id. at 1187)).

For these reasons, the Court should not further consider Davis's waiver of the right to collaterally attack his sentence.

### B. Procedural Default

The United States asserts that Davis has procedurally defaulted his claim that his plea lacked a factual basis and so violated Rule 11.

"Unless the defendant has violated some rule which required him to raise a claim or forfeit it, there is no procedural default." English v. United States, 42 F.3d 473, 477 (9th Cir. 1994).  With the exception of claims of ineffective assistance of counsel,[5] claims that can be raised on direct appeal generally must be raised at that time.   In 1998, the Supreme Court observed that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998).  In that case, the Court concluded that Bousley could have raised on direct appeal his claim that the trial court's Rule

---

[5] A claim of ineffective assistance of counsel is not required to be raised on direct appeal, even if, under the circumstances of the case, it could have been.  See Massaro v. United States, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

11 colloquy did not correctly advise him of the elements of the charge against him.  As was the case in <u>Bousley</u>, the sufficiency of the factual basis for Davis's plea was a matter of record and could have been "fully and completely addressed on direct review based on the record created at the plea colloquy."  <u>Id</u>. at 622.  Consequently, Davis's Rule 11 claim is procedurally defaulted.

Procedural default may be excused on a showing of cause and prejudice or, alternatively, on a showing of actual innocence.  <u>See</u> <u>Bousley</u>, 523 U.S. at 622.  Davis may meet the cause and prejudice test, but under the circumstances of this case, the "actual innocence" standard is met.  If what Davis says is true – that is, if the facts are not sufficient to support his guilty plea – then, by definition, he is actually innocent of the crime charged in Count IV.

The United States argues that the violation Davis alleges was merely technical, <u>see</u> Pl.'s Findings and Conclusions at 12, ¶ 3, so that it is not sufficient to overcome procedural default.  <u>See, e.g.</u>, <u>United States v. Timmreck</u>, 441 U.S. 780, 783-84 (1979) (holding that failure to inform defendant of special parole term was only technical Rule 11 violation and noting that defendant did not attack voluntariness of the plea); <u>United States v. Rivera-Ramirez</u>, 715 F.2d 453, 457 (9th Cir. 1983) (holding that, where defendant challenged manner in which district court advised him of the charges against him, the claimed violation was technical in nature).

As an initial matter, it is not clear whether the objection of "technicality" is a component of the analysis in the wake of the Supreme Court's decision in <u>United States v. Dominguez Benitez</u>, 542 U.S. 74 (2004) (requiring defendant who claims Rule 11 error to show "a reasonable probability that, but for the error, [the defendant] would not have entered the plea.").  <u>See also</u> <u>United States v. Monzon</u>, 429 F.3d 1268, 1272 & n.2 (9th Cir. 2005).  To whatever extent the standards of

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

Dominguez Benitez or Monzon might alter the prior test under Ninth Circuit law for determining a § 2255 movant's ability to raise a Rule 11 claim, the Court finds that there is a reasonable probability that Davis would not have pled guilty and would have gone to trial if he had known that the facts he admitted probably do not constitute the crime charged.

Moreover, in its own terms, the United States' objection is not well-taken. "Actual innocence" could not be a technicality. The factual basis of the plea is a matter of guilt versus innocence. The Supreme Court has explained that the Rule's requirement is firmly tied to the constitutional significance of the plea colloquy:

> A defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.
>     Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea.

McCarthy v. United States, 394 U.S. 459, 466-67 (1969).

Davis has made, at the least, a colorable showing that the facts to which he admitted do not constitute the crime charged. The procedural default is excused. The Rule 11 claim must be addressed on the merits.

### C. Merits

#### 1. Rule 11 Claim

Pursuant to Fed. R. Crim. P. 11(b)(3), a guilty plea may be accepted only if the trial court is

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

convinced that there is sufficient evidence to establish all elements of the offense charged beyond

a reasonable doubt.  See United States v. Alber, 56 F.3d 1106, 1110 (9th Cir. 1995).  The Court itself

need not be convinced that the defendant is guilty beyond a reasonable doubt, but it "must be

convinced that there is sufficient evidence to justify the reaching of such a conclusion."  Id. (citing

United States v. Neel, 547 F.2d 95, 96 (9th Cir. 1976) (per curiam)).  In considering whether the

factual basis is adequate, any and all evidence that is available at the time of judgment may be

considered.  United States v. Lomow, 266 F.3d 1013, 1017 (9th Cir. 2001) (citing Alber, 56 F.3d at

1110).

At the time Davis entered his plea, the Ninth Circuit had not decided a case involving a

charge of possession of a firearm in furtherance of a drug trafficking crime.[6]  Since that time, the

---

[6]  Significantly, the "possession in furtherance" language in § 924(c)(1)(A)(I) was enacted in 1998 in response to the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995).  Before Bailey, § 924(c)(1) made it a crime to "use or carry" a firearm "during and in relation to" a drug crime.  In Bailey, the defendant had cocaine in the passenger compartment of his car and a loaded pistol inside a locked bag in the trunk of his car.  In Robinson, a companion case, the gun was locked in a footlocker inside a bedroom closet.  The Court decided that the United States did not show that a firearm was "used ... during and in relation to a drug trafficking crime" in either case.  See Bailey, 516 U.S. at 151.  The Court required proof that the defendant "actively employed the firearm during and in relation to" the underlying crime.  Id. at 150.

In response, Congress amended § 924(c)(1) to criminalize *possession* of a firearm in connection with a drug crime, provided such possession was "in furtherance" of the crime.  "The legislative history of the 1998 amendment ... expressly clarified that the addition to the statute was not intended to cover every possession of a firearm by one who also is a drug trafficker."  United States v. Iiland, 254 F.3d 1264, 1271 (10th Cir. 2001), cited in Krouse, 370 F.3d at 967.  In fact, the House Report on the proposed amendment said:

> The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence.  Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

Iiland, 254 F.3d at 1271 (quoting H.R. Rep. No. 105-344, 1997 WL 668339 at 9 (1997)).  Congress also discussed the facts of the Bailey case, where the gun was locked in a bag in the car trunk, and observed that, "[s]tanding on its own, this evidence may be insufficient to meet the 'in furtherance of' test.  The government would have to show that the firearm located in the trunk of the car *advanced or promoted Mr. Bailey's drug dealing activity*."  Iiland, 254 F.3d at 1272 (10th Cir. 2001) (quoting H.R. Rep. No. 105-344, 1997 WL

circuit has issued several pertinent decisions. It is now clear that "[e]vidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)." United States v. Krouse, 370 F.3d 965, 966 (9th Cir. 2004). "Congress has not made mere possession, when it occurs contemporaneously with drug manufacture, a strict liability crime." United States v. Mann, 389 F.3d 869, 880 (9th Cir. 2004). Rather, a conviction "requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime." Krouse, 370 F.3d at 966. "In other words," the Krouse court concluded, "this element of § 924(c) turns on the intent of the defendant." Id.

In Krouse, the defendant had 86.5 grams of cocaine, almost 150 pounds of marijuana, and five high-caliber firearms plus ammunition within easy reach, all in the same room of his house. Two other weapons were stored elsewhere, suggesting that Krouse had a special reason for keeping five weapons in his office. Krouse's explanation for the presence of the weapons was that both they and the drugs belonged to two associates, "Rhythm" and "Poetry," who, he said, had commandeered his home office. Id. at 966. Under these circumstances, the appellate panel concluded that there was a sufficient "nexus" between the weapons and the drugs. See id. at 968-69. See also United States v. Mosley, ___ F.3d ___, No. 05-30488, slip op. at 17519 (9th Cir. Oct. 11, 2006).

On the other hand, in Mann, a jury found that the defendant possessed two firearms, a Smith & Wesson .40 caliber semiautomatic pistol and a loaded "pen gun," in furtherance of a drug trafficking crime (the manufacture of methamphetamine) based on the presence of those weapons

---

668339 at 9) (emphasis in Iiland). As in Smith v. United States, 508 U.S. 223 (1993), the firearm's "presence or involvement cannot be the result of accident or coincidence." Id. at 238.

in a locked box in the defendant's pickup truck.  The truck was parked at a rural campsite on Forest Service land.  There were two tents at the campsite, one in which the defendants slept and one devoted to "cooking" methamphetamine.  The box in which the firearms were found also contained ammunition, 30 pseudoephedrine pills, and other drug paraphernalia.  The key to the box was located on top of a propane tank in the sleeping tent.  "Components needed for the manufacture of methamphetamine and various other incriminating items" were also found in the tents.  The circuit held that the evidence was not sufficient to support a conviction for possession of firearms in furtherance of a drug trafficking crime.  In sum, the jury was not permitted to infer that the weapons were possessed for the purpose of facilitating or promoting the defendants' manufacture of methamphetamine on the basis of the following facts: any possession of an unregistered pen gun was illegal, one of the defendants was a convicted felon who was not permitted to possess weapons at all, the firearms and ammunition were found in the same container with precursor drugs and drug paraphernalia, the key to the locked box was readily available in the sleeping tent, and the defendants were camped on remote Forest Service land with one tent exclusively used for the production of methamphetamine.  Id. at 879-880.  The circuit held instead that "the guns were not at hand ... but locked in a safe in a truck, the key was kept in the area of the campsite in which Pollender and Mann slept, and the guns were not easily accessible in an area where drugs were manufactured and stored."  Id. at 880; see also Mosley, slip op. at 17520-21.

Here, the record shows that Davis took the Ruger 44 Magnum with him, stowed under his seat in the truck, at the time he traveled to Carter, Montana, because he did not want to leave the loaded gun in his vehicle while it was parked at a truck stop in Missoula.  See Change of Plea Tr.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

at 36:25-37:10; Evid. Hr'g Tr. at 12:1-13:1; id. at 21:21-25.  Davis left the gun in the truck when he

got out to approach the anhydrous ammonia tanks for the purpose of stealing the chemical.  It was

still in the truck, without the driver's knowledge, when the driver was pulled over.  Id. at 15:9-25.

Although Davis admits that he shared about a quarter of a gram of methamphetamine with

his two companions on the trip, see id. at 14:12-22 – and so "distributed" methamphetamine within

the meaning of Count IV – there is no evidence that the weapon in any way facilitated or promoted

that activity.  The United States speculates that Davis "could have used that firearm to protect from

theft the methamphetamine he had in his possession during the trip to Carter."  Pl.'s Findings and

Conclusions at 17.  However, there is no evidence that he did so.  There is no evidence that he had

reason to fear his cohorts or, conversely, to intimidate them – particularly over a quarter-gram of

methamphetamine that he chose to share with them.  There is no evidence that he had more than a

quarter-gram of methamphetamine with him, cash, or anything else he might have perceived as

needing protection.  See Evid. Hr'g Tr. at 14:12-25.  There simply is no evidence that the firearm

promoted or facilitated or was intended to promote or facilitate the crime alleged.

The United States asks the Court to consider the fact that, if Davis and his companions had

been successful in stealing the anhydrous ammonia, the gun would still have been in the truck,

loaded and readily available, when the three men arrived back in Great Falls to deliver the anhydrous

ammonia to two unidentified persons.  See Evid. Hr'g Tr. at 30:17-31:22; Pl.'s Findings and

Conclusions at 16 ("Had the plan to steal the anhydrous ammonia succeeded, the Defendant would

have been able to use the firearm to protect the anhydrous ammonia from theft.")

First, this argument appears to be based on the same sort of speculation that resulted in the

circuit's vacatur of a jury's verdict in <u>Mann</u>.  There is no evidence that the gun would have remained readily available to Davis under the circumstances of the planned delivery in Great Falls.  One could also speculate that he might have left the vehicle again without the gun, as he did in Carter, in which case he could not be convicted under § 924(c).  He also might have separated from his companions and left the delivery to them, in which case he could not be convicted under § 924(c).

Second, even if the United States' speculation were supported by some evidence, it is irrelevant.  The Information did not charge Davis with possessing the weapon in order to promote or facilitate the conspiracy to manufacture; the Information charged Davis with possessing the weapon in furtherance of distribution or conspiracy to distribute methamphetamine.  The United States conceded that Davis's sharing of a quarter-gram of methamphetamine with his cohorts on the drive up to Carter was not a conspiracy.  <u>See</u> Ev. Hr'g Tr. at 71:11-20; <u>see also</u> <u>United States v. Lennick</u>, 18 F.3d 814, 820 (9th Cir. 1994) (evidence that defendant was "a heavy, chronic marijuana user with a small-time marijuana growing operation who gave and sold some of his harvest to his friends" was not sufficient to support conviction for conspiracy to distribute marijuana, where there was no evidence that defendant employed others to assist him in growing or selling marijuana).  As set forth above, there is no evidence that the weapon in any way promoted or facilitated Davis's sharing of that quarter-gram with his companions.  There is no evidence and, indeed, no allegation that Davis or either of his companions agreed to distribute the methamphetamine that would have been manufactured with the anhydrous ammonia stolen from the tanks in Carter.

The United States also emphasizes the language of the Plea Agreement: "Defendant admits that while engaged in this criminal conduct, he carried a handgun <u>while committing acts in</u>

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17

furtherance of this conspiracy." Pl.'s Findings and Conclusions at 7.  It is not helpful to refer to "acts in furtherance of this conspiracy" when it is unclear which conspiracy is meant and when the undisputed facts do not appear to constitute a crime in connection with either of the alleged conspiracies.  If the language refers to the conspiracy to manufacture alleged in Count I, the problem is that Davis did not take his handgun with him when he got out of the truck to steal the anhydrous ammonia.  Driving to Carter was an act in furtherance of the conspiracy to manufacture, and Davis carried the handgun while he committed that act.  That does not show that he possessed the firearm in furtherance of the act of driving to Carter.  At any rate, participation in a conspiracy to manufacture is not what Count IV charged.  If the language of the plea agreement refers to the conspiracy to distribute that is actually alleged in Count IV, the problem is that there was no conspiracy to distribute when Davis shared methamphetamine with his friends on the drive up to Carter.

The United States argues that the various discrepancies among the Information, the Offer of Proof, the conspiracies alleged, and the facts are "of no consequence" and amount to a "citation error."  Pl.'s Findings and Conclusions at 8, n.1.  The United States has not cited a case, and the Court has found none, published or unpublished, Ninth Circuit or elsewhere, where a conviction was permitted to stand on confusing and contradictory internal cross-references among alleged conspiracies and crimes.  Contrary to the United States' argument, the discrepancies demonstrate that the parties concluded Davis was guilty of possessing a firearm in furtherance of some kind of drug trafficking offense because he had a loaded gun with him at certain points when he engaged in activities that were related to drugs.  Yet there is no demonstrated nexus between Davis's loaded gun

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 18

and any particular drug trafficking offense charged in the Information: conspiracy to manufacture, conspiracy to distribute, or distribution.

The United States also asserts that Davis knew the "in furtherance" element required that his possession of the 44 Magnum "facilitated or played a role in the crime."  Offer of Proof at 3-4. However, it is not meaningful that Davis knew the words by which adequate proof is described if he was also told – as the United States proposes the Court should find – that "he could be convicted of the charge because: (1) the pistol was his; (2) the pistol was loaded; (3) the pistol was located under his seat; and (4) the pistol was in the truck while he provided methamphetamine to his associates en route to Carter."  Pl.'s Findings and Conclusions at 5-6 (citing Evid. Hr'g Tr. at 56:9-17).  These propositions establish possession, not possession in furtherance.  Again, "[e]vidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)."  Krouse, 370 F.3d at 966.[7]

Both parties mistakenly believed that Davis's possession of the firearm on the trip to Carter established a nexus sufficient to support a conviction based on the allegations in Count IV.  The proof was not sufficient.  Davis's motion to vacate should be granted on the grounds that his guilty plea to Count IV lacked a factual basis sufficient to support the charge under Rule 11.

### 2. Ineffective Assistance Claim

---

[7] At the conclusion of the evidentiary hearing, the United States asked the Court to consider the time alleged in the Information: "[o]n or about August 13, 2002, *and before*, near Carter, Montana, and elsewhere in the State and District of Montana." (Emphasis added).  Because there is no evidence in the record of anything that occurred prior to August 13, and because the United States does not include this argument in its Proposed Findings and Conclusions, the Court need not address it.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 19

The primary difference between Davis's Rule 11 claim and his claim of ineffective assistance of counsel is that the Rule 11 claim legitimately questions whether the evidence was sufficient to support the conviction in light of later-issued decisions that were not available at the time of the plea colloquy.  See, e.g., Bousley, 523 U.S. at 620 (where judicial decisions interpret a statute in a way inconsistent with a conviction finalized before the decisions, habeas petitioner may challenge conviction based on correct interpretation of the statute without showing that decisions are "retroactive").  By contrast, an ineffective assistance claim is focused on what counsel knew at the time he made the decision in question.  Under the circumstances of this case, the difference in analytic perspective makes a difference in the outcome of the analysis.

Strickland v. Washington, 466 U.S. 668 (1984), sets the standards with respect to claims of ineffective assistance of counsel.  First, Davis must show that counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  Second, he must show that he was prejudiced by counsel's errors.  Id. at 693.

Under the first prong, counsel's performance need not be perfect.  It must, however, fall "within the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970)).  Under the prejudice prong, in the context of a guilty plea, Davis must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694.  The standard is an objective one; that is, it depends "in large part on a prediction whether the evidence [he could offer] likely would have changed the outcome of a trial"

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 20

or would have "led counsel to change his recommendation as to the plea." Id. at 59-60.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Sheehy plainly had a strategic reason for advising Davis to plead guilty.  He did not want Davis's co-defendants to blame everything on him, and he wanted Davis to be the one to name the recipients of the anhydrous ammonia in his debriefing to the United States.  See id. at 49:25-50:22. In fact, the United States filed a motion under U.S.S.G. § 5K1.1 in exchange for Davis's cooperation. Sheehy also believed that the United States' proof at trial would include instances of Davis's distribution of methamphetamine, "not large amounts," before August 13, 2002, because Davis admitted to such instances in the proffer letter that he personally wrote for Hubley.  See Evid. Hr'g Tr. at 51:23-52:9.

Neither party has produced Davis's proffer letter, but no one has disputed that there were other instances of distribution that could have formed the basis for additional charges against him. The absence of any evidence regarding these other instances, and whether Davis possessed  firearms in connection with those other instances, supports his Rule 11 claim because the evidence to be reviewed there extends only to what was available at the time of judgment.  However, the absence of such evidence detracts from his ineffective assistance claim, because Davis has not shown that Sheehy had no reason to believe that the United States would be unable to prove similar charges, and perhaps even more serious ones, by further investigating Davis's activities before August 13, 2002. Since there is no information in the record on these points, and since Davis has the burden of proving

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 21

his claim, the Court finds that his ineffective assistance of counsel claim fails.

Furthermore, the fact that the United States and Judge Haddon believed the evidence to be sufficient to support a conviction on Count IV strongly suggests that Sheehy's belief was not objectively unreasonable.  Following <u>Krouse</u> and the Ninth Circuit's other cases decided after the judgment herein, it is clear that there was not a sufficient nexus between Davis's gun and his distribution of a quarter-gram of methamphetamine to his friends.  However, at the time of the plea colloquy, it was not unreasonable for Sheehy or Judge Haddon to believe that a jury would convict Davis of violating § 924(c) because he had a loaded handgun under his seat all the way up to Carter.

The Court concludes that Sheehy's performance did not fall below the standard of objectively reasonable professional assistance.  Consequently, there is no need to consider whether Davis was prejudiced.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

Based on the foregoing, the Court enters the following:

## ORDER

Davis's motion to amend (Court's doc. 40) is GRANTED.

The Court also enters the following:

## RECOMMENDATION

Davis's motion to vacate (doc. 18) should be GRANTED as to the Rule 11 claim and DENIED as to ineffective assistance of counsel.  Davis's conviction on Count IV should be VACATED.  The parties should be given thirty days to file motions or initiate other proceedings. If the parties take no action, an amended judgment should be issued deleting all penalties arising

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 22

from Davis's conviction on Count IV.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within ten (10) days after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

DATED this 20th day of October, 2006.


/s/ Carolyn S. Ostby_____
Carolyn S. Ostby
United States Magistrate Judge